TC

**FILED**

JUL 0 9 2008 TC

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
v.                        )    No. **08CR    540**
)    Violations: Title 18,
ROY FLUKER, JR.,          )    United States Code,
ROY FLUKER III, and       )    Sections 1341 and 1343
RONNANITA T. FLUKER       )

### COUNT ONE

The SPECIAL MARCH 2007 GRAND JURY charges:

1.  At times material to this indictment:

a.   Defendant ROY FLUKER, JR. was the founder and Chief
Executive Officer of All Things In Common, LLC ("ATIC"), a company
organized in the State of Michigan on or about May 2, 2005, and
authorized to conduct business in the State of Illinois.   ATIC
transacted business under the name More Than Enough, LLC ("MTE"),
which had offices located at 1111 East 87th Street, Chicago,
Illinois 60619 and at 7759 South Eberhart Avenue, Chicago, Illinois
60619.   Defendant ROY FLUKER, JR. also was the founder and Chief
Executive Officer of Locust International, LLC ("Locust"), a
company organized in the State of Michigan on or about January 23,
2006, and authorized to conduct business in the State of Illinois.
Locust was organized to transact business related to MTE's
purported Housing Department.

b.   Defendant ROY FLUKER III was the son of defendant
ROY FLUKER, JR. and a key employee of MTE.   Many of his main

responsibilities related to operating MTE's purported Housing Department.

c. Defendant RONNANITA T. FLUKER was the daughter of defendant ROY FLUKER, JR. and a key employee of MTE. Many of her main responsibilities related to operating MTE's purported Housing Department.

d. Defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER, through MTE, marketed what purported to be an educational and financial program called the "Spend and Redeem Program." Defendants represented to participants in the Spend and Redeem Program that in return for an investment of money, they would receive 25 percent of their total investment every month for 12 consecutive months.

e. Defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER, through MTE and Locust, also marketed what purported to be a financial program called the "Housing Program." Defendants represented to participants in the Housing Program that the program provided a way for people to reduce their mortgage payments and to own their homes clear of any mortgage within five years.

2. From at least in or about June 2005 and continuing until the present, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROY FLUKER, JR.,
ROY FLUKER III, and
RONNANITA T. FLUKER,

defendants herein, along with others both known and unknown to the Grand Jury, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and by material omissions, which scheme is further described below.

3.     It was part of the scheme that as a result of their false and fraudulent pretenses, representations, promises, and omissions, defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER obtained more than $9,000,000 from more than 3,000 Spend and Redeem Program participants and more than 25 Housing Program participants. The defendants intended to and did misappropriate participants' funds for their own use and benefit and to make Ponzi-type payments to earlier participants, the nature of which they concealed from investors. That is, the defendants concealed that their ability to make promised payments depended on raising funds from new investors. The defendants made these Ponzi-type payments to keep participants from complaining to authorities and to create the false impression that the programs were profitable, in order to encourage current participants to reinvest and others to make new investments, and to encourage Spend and Redeem Program participants to also participate in the Housing Program.

3

4.    It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER marketed the Spend and Redeem Program and the Housing Program by targeting members of churches through monthly "venue" meetings.  These meetings took place at various churches and hotels throughout the Chicago area.  Each venue was allowed to have a maximum of 100 members before a new venue was opened.

5.    It was further part of the scheme that, during meetings at each venue, defendant ROY FLUKER, JR. or another MTE employee told attendees about MTE's Spend and Redeem Program and Housing Program.  The monthly meetings also included an educational component addressing financial and lifestyle-related topics.

### Spend and Redeem Program

6.    It was further part of the scheme that individuals could "spend" a minimum of $500 and a maximum of $5,000 per month through MTE's Spend and Redeem Program by providing a cashier's check or money order to MTE.  Individuals could contribute to the program up to $20,000 per year per adult and $5,000 per year for children under 18 years old.

7.    It was further part of the scheme that, in exchange for their participation in the Spend and Redeem Program, individuals were given certificates which were to be redeemed at the monthly venue meetings for a monetary payment from MTE.  The MTE representatives stated, and Spend and Redeem Program contracts

4

stipulated, that participants would receive 25 percent of their total investment every month for 12 consecutive months.

8.   It was further part of the scheme that, on multiple occasions, defendant ROY FLUKER, JR. falsely represented to certain Spend and Redeem Program participants that MTE invested money in the foreign exchange market. ROY FLUKER, JR. falsely claimed that he had achieved significant financial returns through the buying and selling of different currencies.

9.   It was further part of the scheme that, on multiple occasions, defendant ROY FLUKER, JR. falsely represented to certain Spend and Redeem Program participants that he had invested in the real estate market to generate substantial financial returns.

10.  It was further part of the scheme that defendant ROY FLUKER, JR. provided few details about his investment strategies and sometimes stated that he could not reveal his strategies because others would steal his ideas.

11.  It was further part of the scheme that, around March 2006, defendant ROY FLUKER, JR. held a meeting at the Sears Tower in Chicago, Illinois for certain Spend and Redeem Program participants. At this meeting, ROY FLUKER, JR. introduced MTE's "Presidential Club," also known as the "Big Boys Club." Membership in this club required an investment of at least $50,000.  ROY FLUKER, JR. falsely represented that a membership would earn participants a 25 percent monthly return for 12 consecutive months.

Members had to wait two months after making their investment before receiving their first monthly payment, whereas Spend and Redeem Program participants had to wait only one month.

12. It was further part of the scheme that defendant ROY FLUKER, JR. falsely represented to the attendees of the Presidential Club meeting that MTE was starting to become involved with investments in gold mines in Africa. ROY FLUKER, JR. falsely claimed to have well-connected contacts in Africa who could assure that MTE gained access to the mines. ROY FLUKER, JR. falsely represented that MTE needed to purchase certain equipment to gain access to these mines, and that this would be one of the uses of the money contributed by Presidential Club members. ROY FLUKER, JR. falsely promised that anyone who joined the Presidential Club would become a millionaire.

13. It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER, and other MTE employees acting at the defendants' direction, deposited money collected from the Spend and Redeem Program and Presidential Club participants into accounts at various financial institutions, including Charter One Bank, J.P. Morgan Chase, and TCF. The money taken in through the Spend and Redeem Program and Presidential Club was never invested in foreign exchange, African gold mines, non-Housing Program revenue-generating real estate deals, or any type of financial security that could provide a return on the

money.  All 25 percent monthly return payments made to participants in these programs were made directly from the original principal contributed by participants in the Spend and Redeem Program and in the Presidential Club and from money collected by MTE and Locust through the Housing Program.

### Housing Program

14.  It was further part of the scheme that MTE promoted a Housing Program.  The terms and structure of MTE's Housing Program originated with defendant ROY FLUKER, JR.  Defendants ROY FLUKER III and RONNANITA T. FLUKER were responsible for overseeing and executing transactions with specific individuals in MTE's Housing Program.  Other MTE employees who promoted and worked with the Housing Program learned the details of the program directly or indirectly from the defendants.

15.  It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER falsely represented that the Housing Program was completely separate from MTE's Spend and Redeem Program, when in fact it provided significant financial support to the Spend and Redeem Program. Indeed, funds obtained by the defendants from participants in the Housing Program were used to make Ponzi-type payments to numerous Spend and Redeem Program participants.

16.  It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER, and other MTE

7

employees, based on information provided by the defendants, falsely represented to Housing Program participants that the Housing Program would enable them to reduce their mortgage payments and to own their homes clear of any mortgage within five years.

17.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER falsely represented to certain Housing Program participants that ROY FLUKER, JR. held patents on different mortgage plans within the Housing Program.

18.   It was further part of the scheme that, within the Housing Program, MTE offered a "Reverse Mortgage Program" and a "35 Percent Equity Program." At times, the "35 Percent Equity Program" was also referred to as the "50 Percent Mortgage Payment Reduction Program." Individuals who qualified for either of these programs were required to take out a mortgage to refinance their homes and to give all or a portion of the equity they owned to MTE. Defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER, and other MTE employees repeating what the defendants had told them, falsely represented to participants that MTE would invest the equity money and use the significant returns generated from the investments to pay back traditional 30-year loans in five years.

19.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER falsely

8

represented that MTE accepted responsibility for paying the lender directly on behalf of the borrower.

20.   It was further part of the scheme that, for individuals who were otherwise qualified to participate in the Housing Program but lacked a high enough credit score, MTE provided an "A-Buyer" to facilitate an individual's participation in the Housing Program. A-Buyers were other MTE members who had high credit scores and could therefore qualify for loans.   Following the directions of defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER, A-Buyers took out loans to purchase homes from Housing Program participants with low credit scores.   The seller of the home continued to live in the residence and paid no rent to the A-Buyer.

21.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER provided A-Buyers with the money needed to pay closing costs and make down payments on homes they purchased.   The money provided by defendants for this purpose came directly from money given to MTE by Spend and Redeem Program and other Housing Program participants.

22.   It was further part of the scheme that, in order to qualify for the Reverse Mortgage Program, individuals were required to own a minimum of 75 percent equity in their homes.   After closing on the refinancing or sale of their homes, Reverse Mortgage Program participants were required to pay MTE from the equity proceeds from the transaction an amount equal to at least 75

percent of the value of the home.  Defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER falsely represented to participants that this equity money would be used by MTE to repay traditional 30-year loans in only five years.  Defendants falsely represented that MTE would be responsible for paying the lenders directly on behalf of the borrowers under this program.  Defendants also falsely promised to make monthly payments to Reverse Mortgage Program participants equal to one percent of the total loan value.

23.  It was further part of the scheme that, in order to qualify for the 35 Percent Equity Program, individuals were required to own a minimum of 35 percent equity in their homes. After closing on the refinancing or sale of their home, 35 Percent Equity Program participants were required to pay MTE from the equity proceeds from the transaction an amount equal to at least 35 percent of the value of the home.  Defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER falsely represented to participants that this equity money would be used by MTE to repay traditional 30-year loans in only five years.  Defendants falsely represented that MTE would be responsible for paying the lenders directly on behalf of the borrowers under this program.  Defendants promised the 35 Percent Equity Program participants that they would be given a six-month period in which they did not have to make any payments toward the mortgage on their home.  Defendants did require, at the end of the six months, the 35 Percent Equity

10

Program participants to make monthly payments to MTE, and later to Locust, in an amount equal to approximately one-half of their mortgage payment.

24.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER pretended to provide assistance to Housing Program participants by collecting paperwork for loan applications and requiring Housing Program participants to use mortgage brokers referred by MTE.  The loans that defendants fraudulently induced Housing Program participants to take out were high-interest rate loans with principal balances that were significantly higher than the previous balances owed on their homes.  As a result, the monthly mortgage payments on the loans taken out through MTE's Housing Program were significantly higher than the monthly payments due on the homes previously.  In most cases, the monthly mortgage payments exceeded the amounts the homeowners could afford if they were paying the mortgages on their own, which defendants falsely assured the homeowners they would not be doing.

25.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER falsely represented to certain Housing Program participants that they were getting loans at low, fixed interest rates when in fact the loans had low interest rates for only a few months but thereafter had adjustable interest rates that were much higher.

11

26.   It was further part of the scheme that one or more of the defendants attended certain title company closings for the Housing Program.   Following the traditional real estate closing, Housing Program participants attended a second closing with one or both of defendants RONNANITA T. FLUKER and ROY FLUKER III.   At this meeting, RONNANITA T. FLUKER or ROY FLUKER III typically presented the Housing Program participant with certain documents, often including a "Mortgage Agreement," "Loan Calculator," and "Lease Payment Calculation Sheet."  The Mortgage Agreement was drafted as if the Housing Program participants were loaning MTE money from the equity of their homes.   The agreement outlined the terms under which the defendants falsely represented that MTE would repay the loan in five years.   The Loan Calculator outlined a five-year repayment schedule for that particular loan showing consistent monthly payments well above the traditional 30-year monthly payment.   The Lease Payment Calculation Sheet outlined the amount the Housing Program participants would have to pay MTE or Locust each month after the six-month window of making no payments elapsed.

27.   It was further part of the scheme that equity money given to MTE and Locust through the Housing Program was deposited by defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER into bank accounts at the same institutions as the Spend and Redeem Program proceeds.   The money taken in by MTE and Locust through the

Housing Program was never invested in any significant way, if at all, in foreign exchange, African gold mines, non-Housing Program revenue-generating real estate deals, or any type of financial security that could provide a return on the money.  All monthly mortgage payments made to lenders by MTE and Locust on behalf of Housing Program participants and A-Buyers were made directly from money contributed by Spend and Redeem Program participants and from money collected by MTE and Locust through the Housing Program.

28.  It was further part of the scheme that neither MTE, Locust, nor any other entity controlled by defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER ever made consistent payments toward any mortgage on behalf of a Housing Program participant or A-Buyer that exceeded the minimum amount due according to a 30-year repayment schedule.  Contrary to the representations defendants had made to Housing Program participants, neither MTE, Locust, nor any other entity controlled by defendants made consistent "lump-sum" payments on any mortgage on behalf of a Housing Program participant or A-Buyer to accelerate the loan repayment schedule to the five-year plan promised by defendants.

29.  It was further part of the scheme that, beginning in late 2006, defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER caused monthly mortgage payments made by MTE and Locust to be late.  After Housing Program participants and A-Buyers began

13

receiving unexpected telephone calls from lenders advising them of overdue payments and possible damage to their credit, the borrowers made many attempts to contact defendants, but defendants rarely answered their telephones or returned calls.

30. It was further part of the scheme that, beginning around late 2006 or early 2007, defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER caused MTE and Locust to stop making all payments on mortgages. Borrowers again tried contacting defendants with little success, as they did not answer their phones and rarely returned calls.

31. It was further part of the scheme that, in about February 2007, defendant RONNANITA T. FLUKER called several Housing Program participants and told them that Locust would not be able to make any mortgage payments for 60 to 90 days. After that time period elapsed, Locust did not resume making mortgage payments for Housing Program participants.

32. It was further part of the scheme that, during the time period when MTE and Locust were making late mortgage payments or no payments at all, defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER caused Housing Program participants to continue to receive monthly invoices for payments due to Locust for the participants' portion of the mortgage. As a result, some Housing Program participants made payments to Locust during months in which neither MTE nor Locust paid their mortgage.

14

## MTE Entities Outside of Illinois

33.  It was further part of the scheme that defendant ROY FLUKER, JR. worked with MTE venue meeting attendees from outside of Illinois to form and start venues in other states, resulting in the formation of More than Enough of Florida, LLC ("MTE of Florida"); More Than Enough of Georgia, LLC ("MTE of Georgia"); More Than Enough of Nevada, LLC ("MTE of Nevada"); and More Than Enough of Wisconsin, LLC ("MTE of Wisconsin").

34.  It was further part of the scheme that defendant ROY FLUKER, JR. required the out-of-state entities to turn over all money collected at venue meetings to the Chicago-based MTE.  One or more of the defendants, or another Chicago-based MTE representative sent by ROY FLUKER, JR., would attend out-of-state venue meetings and collect the money to return it to Chicago.

35.  It was further part of the scheme that, despite repeated requests from the local employees of each of these out-of-state entities, defendant ROY FLUKER, JR. never formalized compensation or business agreements with these entities.  In spite of repeated requests and many hours of labor, ROY FLUKER, JR. never compensated the individuals responsible for organizing and maintaining the venues in other states.

36.  It was further part of the scheme that defendant ROY FLUKER, JR. told employees of MTE of Georgia that they would be compensated only when members started taking out mortgages through

MTE's Housing Program. Although there was substantial interest in the Housing Program, no MTE of Georgia members were able to close on a loan because of the backlog of applicants at MTE's Chicago office.

37. It was further part of the scheme that, after the State of Illinois Attorney General initiated a civil action against defendant ROY FLUKER, JR., ATIC, and others seeking to enjoin the activities relating to the Spend and Redeem Program, ROY FLUKER, JR. arranged to continue operating his business from a different office in Chicago.

38. It was further part of the scheme that, in or around April 2007, defendant ROY FLUKER, JR. began holding monthly venue meetings in Palm Bay, Florida, and shortly thereafter, ROY FLUKER, JR. began holding monthly venue meetings in Chicago Heights, Illinois. ROY FLUKER, JR. operated these venues under the company name of Wealth Creation Institute. ROY FLUKER, JR. continued to offer to individuals a financial program with 25 percent monthly returns that was essentially the same as the Spend and Redeem Program, but he did not refer to the program as involving an investment. Instead, ROY FLUKER, JR. referred to the program as an educational program or school. ROY FLUKER, JR. also continued to solicit individuals for participation in his Housing Program.

39. It was further part of the scheme that the money taken in through the Spend and Redeem Program and Housing Program allowed

16

Case 1:08-cr-00540   Document 1   Filed 07/09/2008   Page 17 of 32

MTE to pay 25 percent returns each month to the Spend and Redeem Program participants for several months.

40.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER failed to disclose to Spend and Redeem Program and Housing Program participants that MTE had no substantive investments capable of producing returns sufficient to repay participants.

41.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER failed to disclose to Spend and Redeem Program and Housing Program participants that MTE was using participants' funds to repay earlier participants.

42.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER failed to disclose to Spend and Redeem Program and Housing Program participants that MTE's ability to repay participants was dependent on MTE's continuing to fraudulently raise funds from future participants.

43.   It was further part of the scheme that defendants ROY FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER failed to disclose to Spend and Redeem Program and Housing Program participants that ROY FLUKER, JR. had been convicted in May 2003 of the felony offense of uttering and publishing a forged instrument in the state of Michigan.

44.   It was further part of the scheme that defendants ROY
FLUKER, JR., ROY FLUKER III and RONNANITA T. FLUKER controlled all
of the bank accounts holding proceeds from Spend and Redeem
Program, Presidential Club, and Housing Program participants.   In
addition to not making any significant potential revenue-producing
investments with this money, the defendants transferred hundreds of
thousands of dollars from MTE, ATIC and Locust bank accounts into
personal bank accounts and other business accounts controlled by
the defendants and their family members.   This money was used to
pay various personal expenses of defendants and their family
members,   including   automobile   purchases   and   payments,
travel-related expenses, and meal purchases.

45.   On or about January 18, 2006, at Chicago, in the Northern
District of Illinois, Eastern Division, and elsewhere,

                    ROY FLUKER, JR.,
                    ROY FLUKER III, and
                    RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described
scheme and attempting to do so, knowingly caused to be transmitted
by means of wire communication in interstate commerce, certain
writings, signs, signals, and sounds, namely, an electronic funds
transfer in the amount of $44,000 from Charter One Bank, East
Providence, Rhode Island, to J.P. Morgan Chase Bank, Chicago,
Illinois, for credit to the account of Individual A, which funds
transfer in part represented funds used by Individual A to pay

18

closing costs for the mortgage loan issued to Individual A to purchase the property located at 16828 Paxton Avenue, South Holland, Illinois;

In violation of Title 18, United States Code, Section 1343.

<u>COUNT TWO</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about February 28, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROY FLUKER, JR.,
ROY FLUKER III, and
RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely, an electronic funds transfer in the amount of $208,368.44 from U.S. Bank, Portland, Oregon, to J.P. Morgan Chase, Chicago, Illinois, for credit to the account of First American Title, which funds transfer represented the proceeds of a mortgage loan issued to Individual B for the refinancing of the property located at 8315 South Calumet, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about April 13, 2006, at Chicago, in the Northern District of Illinois, Eastern Division,

> ROY FLUKER, JR.,
> ROY FLUKER III, and
> RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting so to do, knowingly caused to be delivered by mail, according to the direction thereon, an envelope containing a letter from MTE and Individual C's Spend and Redeem Program "redemption" certificates, that envelope being addressed to:

> Individual C
> 7658 South Luella Avenue
> Chicago, IL 60649;

In violation of Title 18, United States Code, Section 1341.

## COUNT FOUR

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about April 14, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROY FLUKER, JR.,
ROY FLUKER III, and
RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely, an electronic funds transfer in the amount of $255,681.16 from Deutsche Bank Trust Company, New York, New York to J.P. Morgan Chase Bank, Chicago, Illinois, for credit to the account of First American Title, which funds transfer represented the proceeds of a mortgage loan issued to Individual A for the purchase of the property located at 16828 Paxton Avenue, South Holland, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.     On or about May 22, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROY FLUKER, JR.,
ROY FLUKER III, and
RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely, an electronic funds transfer in the amount of $593,164.34 from Deutsche Bank Trust Company, New York, New York, to LaSalle Bank, Chicago, Illinois, for credit to the account of Citywide Title Corporation, which funds transfer represented the proceeds of a mortgage loan issued to Individual D for the refinancing of the property located at 3 Delphi Court, Tinley Park, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about May 31, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROY FLUKER, JR.,
ROY FLUKER III, and
RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely, an electronic funds transfer in the amount of $268,274.17 from Deutsche Bank Trust Company, New York, New York, to LaSalle Bank, Chicago, Illinois, for credit to the account of Citywide Title, which funds transfer represented the proceeds of a mortgage loan issued to Individual E for the refinancing of the property located at 4120 West 87th Street, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

24

## COUNT SEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about June 13, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROY FLUKER, JR.,<br>
ROY FLUKER III, and<br>
RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely, an electronic funds transfer in the amount of $225,094.47 from Deutsche Bank Trust Company, New York, New York, to LaSalle Bank, Chicago, Illinois, for credit to the account of Citywide Title, which funds transfer represented the proceeds of a mortgage loan issued to Individual F for the refinancing of the property located at 21 South Menard, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT EIGHT

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about July 11, 2006, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, and elsewhere,

                    ROY FLUKER, JR.,
                    ROY FLUKER III, and
                    RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely, an electronic funds transfer in the amount of $216,575.04 from Washington Mutual Bank, Stockton, California, to LaSalle Bank, Chicago, Illinois, for credit to the account of Citywide Title, which funds transfer represented the proceeds of a mortgage loan issued to Individual G for the refinancing of the property located at 2872 West 83rd Place, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about September 27, 2006, at Arlington Heights, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROY FLUKER, JR.,
ROY FLUKER III, and
RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely, an electronic funds transfer in the amount of $388,281.20 from Washington Mutual Bank, Stockton, California, to Village Bank and Trust, Arlington Heights, Illinois, for credit to the account of Integrity Title, which funds transfer represented the proceeds of a mortgage loan issued to Individual H for the refinancing of the property located at 1220 East Hyde Park, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about January 5, 2007, at Bedford Park, in the Northern District of Illinois, Eastern Division,

> ROY FLUKER, JR.,
> ROY FLUKER III, and
> RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing a letter from defendant RONNANITA T. FLUKER welcoming Individual D into Locust's "50% Mortgage Payment Reduction Program," that envelope being addressed to:

> Individual D
> 3 Delphi Court
> Tinley Park, IL 60477-4817;

In violation of Title 18, United States Code, Section 1341.

28

<u>COUNT ELEVEN</u>

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 44 of Count One of this indictment are hereby realleged and incorporated herein by reference.

2.    On or about January 5, 2007, at Bedford Park, in the Northern District of Illinois, Eastern Division,

ROY FLUKER, JR.,
ROY FLUKER III, and
RONNANITA T. FLUKER,

defendants herein, for the purpose of executing the above-described scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing a letter from defendant RONNANITA T. FLUKER welcoming Individual E into Locust's "50% Mortgage Payment Reduction Program," that envelope being addressed to:

Individual E
4120 West 87th
Chicago, IL 60652

In violation of Title 18, United States Code, Section 1341.

29

## FORFEITURE ALLEGATIONS

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    The Grand Jury realleges Counts One through Eleven of this Indictment for the purpose of alleging that certain property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.    As a result of the offenses charged in Counts One through Eleven of this Indictment, alleging violations of Title 18, United States Code, Sections 1341 and 1343,

ROY FLUKER, JR.,<br>
ROY FLUKER III, and<br>
RONNANITA T. FLUKER,

defendants herein, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes and is derived from proceeds traceable to the commission of the offenses, including but not limited to the following:

   a.    $9,000,000;

   b.    one 2007 Dodge Nitro (VIN 1D8GT28K57W562184);

   c.    one 2001 BMW 325E  (VIN WBABS33411JY54569);

   d.    real property commonly known as 1779 Charm Court, Rochester Hills, Michigan 48306;

e.    real property commonly known as 3791 Bainbridge Road, Cleveland Heights, OH 44118;

f.    real property commonly known as 4167 North Sherman Boulevard, Milwaukee, Wisconsin 53216;

g.    real property commonly known as 2936 North 30th Street, Milwaukee, Wisconsin 53210;

h.    real property commonly known as 3755 North 22nd Street, Milwaukee, Wisconsin 53210;

i.    real property commonly known as 2430 North 19th Street, Milwaukee, Wisconsin 53206;

3.    If, as a result of any act or omission by the defendants, any of the forfeitable property described above:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All  pursuant  to  Title  18,  United  States  Code,  Section
981(a)(1)(C),  and  Title  28,  United  States  Code,  Section  2461(c).


A TRUE BILL:


_____

FOREPERSON




_____

UNITED STATES ATTORNEY